THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRIS BURTON, | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 23 C 5395 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| HMS HOST (Chief Executive Officer), | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Chris Burton has worked as a server for Defendant HMS Host at Chicago O'Hare International Airport since April 2013. On August 11, 2023, Burton sued HMS for race and color discrimination, retaliation, failure to promote, failure to stop harassment, retaliation, and other various complaints. 42 U.S.C. §§ 1981, 2000e-2(a); (Dkt. 1). HMS now moves to dismiss Burton's claims. (Dkt. 24). After Burton failed to timely respond, HMS requested the Court dismiss Burton's claims with prejudice. (Dkt. 29). On February 15, 2024, Burton then filed two responses to HMS's motion along with one filing requesting the Court allow his late responses. (Dkts. 30–32). For the reasons below, HMS's motion to dismiss [24] is granted.

## BACKGROUND

The Court takes the following facts from Burton's complaint[1] and liberally construes his pro se pleadings. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016); *Greyer v. IDOC*, 933 F.3d 871, 878 (7th Cir. 2019); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

---

[1] Burton responded to HMS's motion to dismiss by providing a series of additional allegations he did not previously provide in his EEOC charge or complaint. (*See* Dkt. 30). But "[i]t is a basic principle that [Burton's] complaint may not be amended by [his] briefs in opposition to a motion to dismiss." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F3d 328, 348 (7th Cir. 2012) (citing *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)). Even as a pro se litigant, Burton must follow procedural rules. *McCurry v. Kenco Logistics Servs.*, 942 F.3d 783, 787 n. 2 (7th Cir. 2019). The Court will therefore only consider conduct alleged in Burton's complaint.

1

("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (cleaned up).

Burton—who is African American and lives in Cook County, Illinois—has worked as a server for HMS Host at Chicago O'Hare International Airport since April 2013. (Dkt. 1 at 1–2, 7). HMS allegedly discriminated against Burton based on his race and color and retaliated against him between 2019 and 2023. (*Id.* at 2, 3–5). Besides providing the "2019–2023" time range, Burton does not assign specific dates or actors to the conduct alleged in his complaint. (*See id.*) Burton brings a plethora of other allegations against HMS, such as they (1) failed to promote him; (2) failed to stop harassment against him; (3) did not accommodate his complaints; (4) failed to release a seniority sheet to him; (5) failed to "stop physical assault" against him; (6) did not "address unfair treatment in the workplace," by having an appropriate meeting; (7) terminated his health insurance; and (8) refused to serve African American customers while "accusing" him of the same. (*Id.* at 4–5). In support of his claims, Burton alleges failings with HMS's Human Resources, stating that HMS "refused to allow [an] appropriate meeting concerning racial discrimination and harassment" or act on reports of "similar [r]acial[ly] discriminat[ory] acts done to other" O'Hare workers and customers. (*Id.* at 5). Though HMS "never received a complaint from anyone about" Burton, HMS allegedly disciplined him and terminated his health insurance. (*Id.* at 5).

On June 7, 2023, Burton filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC")—alleging HMS racially discriminated and retaliated against him between May 1, 2023 and June 7, 2023.[2] (*Id.* at 7). In his EEOC charge, Burton alleged that

---

[2] Burton's complaint states he filed his EEOC charge on June 6, 2023. The EEOC charge attached to his complaint, however, indicates Burton filed the charge on June 7, 2023. The Court finds that Burton filed his EEOC charge on June 7, 2023. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (noting courts may consider "documents attached to the complaint"); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (stating when an attached document "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls").

2

HMS subjected him "to harassment and different terms and conditions of employment, including but not limited to, increased discipline and scrutiny." (*Id.*) Burton then complained to HMS, who later denied him from switching shifts. (*Id.*) Burton concluded: "I believe I was discriminated against because of my race, Black. [sic] and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended." (*Id.*) Burton received notice of his right to sue on June 9, 2023. (*Id.* at 9).

Burton proceeded to bring suit against HMS under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. (*Id.*) HMS moves to dismiss, arguing that Burton (1) failed to exhaust his administrative remedies under Title VII; and (2) failed to state discrimination and retaliation claims. (Dkt. 26 at 1). The Court ordered Burton to respond to HMS's motion by January 30, 2024. (Dkt. 27). Burton ultimately filed three late responses.[3] (Dkts. 30–32).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

---

[3] After Burton failed to timely respond to HMS's motion to dismiss, HMS requested the Court to dismiss Burton's claims with prejudice. (Dkt. 29). Burton then filed three late responses. (Dkts. 30–32). In his third response, Burton asks the Court to "forgive" his responses because he was allegedly "invol[v]ed in two car accidents." (Dkt. 32). The Court has discretion to excuse a plaintiff's timely failure, especially one who is pro se. *See Hudson v. Gaines*, 2022 WL 4272781 at *3 (N.D. Ill. Sept. 15, 2022). To be sure, procedural rules and deadlines still apply to pro se litigants. *Cady v. Sheahan*, 467 F. 3d 1057, 1061 (7th Cir. 2006). Nevertheless, "it is incumbent on [the Court] to take appropriate measures to permit the adjudication of pro se claims on the merits, rather than to order dismissal on technical grounds." *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F. 3d 548, 555 (7th Cir. 1996). Even if Burton filed no response to HMS's motion to dismiss, "the mere failure of the plaintiff to affirmatively oppose the motion does not excuse the movant from meeting" its "burden to prove that no legally cognizable claim for relief exists[.]" *Hudson*, 2022 WL 427281 at *2; *see also Swofford v. Jordan*, 2022 WL 2829762 at *2 (7th Cir. 2022) (noting district courts "cannot rely solely on the plaintiff's lack of response" in granting a motion to dismiss). The Court therefore declines to dismiss Burton's complaint on waiver grounds.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend. Mut. Ins.*, 844 F.3d at 675). The Court "also consider[s] any documents attached to and integral to the complaint as part of the [plaintiff's] allegations." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022).

Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual content must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court also construes a pro se complaint liberally by giving the allegations "fair and meaningful consideration." *Palmer v. City of Decatur*, 814 F.2d 426, 428–29 (7th Cir. 1987); *see also Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (holding pro se pleadings to "less stringent standards").

## DISCUSSION

At issue is (1) whether Burton exhausted administrative remedies for his Title VII claims before filing the present suit; and (2) whether Burton stated claims under Title VII and § 1981 upon which the Court may grant him relief.

### I. Failure to Exhaust Administrative Remedies

Before filing suit under Title VII, a plaintiff must file an EEOC charge within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). Further, a plaintiff is limited to bringing claims "like or reasonably related to the allegations of the charge and growing out of the allegations." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (quoting *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005)).

The exhaustion requirement serves two purposes: (1) giving the EEOC and the employer a chance to settle the matter; and (2) giving the employer notice of the challenged conduct. *Chaidez*, 937 F.3d at 1004. At minimum, the charge and the complaint must "describe the *same conduct* and implicate the *same individuals*." *Id.* (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (emphasis in original)). In comparing Burton's EEOC charge with his complaint, the Court "read[s] the claims in the EEOC charge liberally," since Burton submitted the charge without legal representation. *Chaidez*, 937 F.3d at 1005 n.3; *see also Bilal v. Rotec Indus., Inc.*, 326 F. App'x 949, 953 (7th Cir. 2009) (explaining that courts "look to the substance of the charges, not merely whether a particular box was checked on the EEOC form").

As an initial matter, Burton filed his EEOC charge on June 7, 2023, and in his Complaint claims that HMS discriminated against him between 2019 and 2023—including "on or about, or beginning on or about June 20, 2023." (Dkt. 1 at 1, 7). As Burton was required to file an EEOC charge within 300 days after the alleged unlawful employment practice occurred, any alleged acts that occurred between January 1, 2019 and August 10, 2022 or after June 7, 2023 fall outside of this window cannot be considered. Nevertheless, the Court can consider any alleged acts between August 11, 2022 and June 7, 2023. Though Burton does not provide exact (or approximate) dates for the majority of the conduct he alleges, the Court dismisses with prejudice Burton's allegations to the extent the conduct occurred before August 11, 2022 or after June 7, 2023.

Second, Burton failed to exhaust administrative remedies for all of his Title VII claims as he does not allege conduct in his EEOC charge that is the same or reasonably related to the conduct alleged in his Complaint. Construing Burton's EEOC charge liberally, the Court reads Burton to allege a hostile work environment, color discrimination, race discrimination, retaliation, and failure to promote, along with miscellaneous complaints. The Court will address each in turn.

### A. Hostile Work Environment

Though HMS concedes that Burton's EEOC charge alleges race discrimination and retaliation, they contend it did not specifically assert a hostile work environment claim. (Dkt. 26 at 9 n. 2). Yet, HMS reads Burton's charge "too narrowly" by solely "highlighting the absence of the phrase 'hostile work environment.'" *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty*, 804 F. 3d 826, 832 (7th Cir. 2015). Although Burton did not explicitly state the phrase "hostile work environment," the Court must "look to the substance of the charges, not merely whether a particular box was checked on the EEOC form." *Bilal*, 326 F. App'x at 953.

In doing so, it becomes clear that Burton alleges—albeit generally—that he endured harassment. In his EEOC charge, Burton claims he was "subjected to harassment and different terms and conditions of employment, including but not limited to, increased discipline and scrutiny." (Dkt. 1 at 7)*; see Huri*, 804 F. 3d at 832 ("In the context of Title VII cases, the word 'harassment' frequently describes the conduct that defines the phrase 'hostile work environment.'"); *Dandy v. Utd. Parcel Serv., Inc.*, 388 F. 3d 263, 271 (7th Cir. 2004).

Even so, Burton failed to exhaust administrative remedies for his hostile work environment claim: In his EEOC charge, he provides no supporting facts or dates. Burton's complaint alleges various conduct that could constitute a hostile work environment claim—including that HMS failed to stop harassment, failed to accommodate his complaints, "[r]efused to stop physical assault . . . [r]efused to allow [an] appropriate meeting concerning racial discrimination and harassment" and "[f]ailed to address unfair treatment in [the] workplace." (Dkt. 1 at 4–5). But no conduct alleged in the complaint is "like or reasonably related to" Burton's hostile work environment allegation in his EEOC charge or "describe[s] the *same conduct*" by HMS. *Chaidez*, 937 F.3d at 1004. Although "technicalities are particularly inappropriate in a statutory scheme like

6

Title VII," where pro se litigants typically initiate the process, "the requirement of some specificity in an EEOC charge is not a mere technicality." *Shah v. AbilityLab*, 2023 WL 6388228 at *4 (N.D. Ill. 2023) (citing *Reynolds v. Tangherlini*, 737 F. 3d 1093, 1100 (7th Cir. 2013)). Ultimately, Burton's brief and very general statements of harassment in his EEOC charge "cannot sustain subsequent claims for *any* related conduct that took place in connection with the claim alleged." *Id.* (citing *Rush v. McDonald's Corp.*, 966 F. 2d 1104, 1110 (7th Cir. 1992) (quotations omitted)). The Court therefore dismisses Burton's hostile work environment claim for failure to exhaust.

### B. Racial Discrimination

In the same vein, Burton's racial discrimination claim fails to exhaust administrative remedies. Burton's EEOC charge alleges he was subjected to "different terms and conditions of employment, including but not limited to, increased discipline and scrutiny." (Dkt. 1 at 7). Burton's complaint then alleges that HMS "[n]ever held a meeting about [his] claims and complaints of racial discrimination" and "[n]ever received a complaint from anyone about" Burton—yet he "[got] disciplined." (*Id.* at 5). Yet again, Burton's charge and complaint only "generally assert the same kind of discrimination" by discussing a similar occurrence, without providing any specific dates or detail that can enable the Court to find a "factual relationship between them." *Chaidez*, 937 F.3d at 1005. Burton's charge and complaint therefore fail to "describe the *same conduct*." *Id.* at 1004. The Court dismisses Burton's racial discrimination claim for failure to exhaust.

### C. Color Discrimination

Burton also failed to exhaust administrative remedies for his color discrimination claim. Though Burton alleged race discrimination in his EEOC charge, it is devoid of references to hue or skin color. (*See* Dkt. 1 at 3). On the whole courts in this District have not found a color discrimination claim to grow out of a race discrimination charge for exhaustion purposes. *See*

7

*Nickerson v. US Airways, Inc.*, 2016 WL 3563807 at *4 (N.D. Ill. 2016) (collecting cases). Although Burton's EEOC charge alleges discrimination "because of [his] race, Black," such language did not give the EEOC or HMS sufficient notice that color discrimination was an issue for investigation and conciliation efforts. *See, e.g.*, *Abubakar v. Walmart, Inc.*, 2022 WL 14632902 at *3 (N.D. Ill. 2022) (finding plaintiff alleging discrimination in her EEOC charge "based on [her] race, Black," was "insufficient to find a claim for color discrimination"); *Williams v. Cnty. of Cook*, 969 F. Supp. 2d 1068, 1078–79 (N.D. Ill. 2013) (same); *Howell v. Rush Copley Med. Grp. NFP*, 2012 WL 832830 at *3 (N.D. Ill. 2012) (same); *Thompson v. Fairmont Chi. Hotel*, 525 F. Supp. 2d 984, 989–90 (N.D. Ill. 2007) (same). In turn, the Court dismisses Burton's color discrimination claim for failure to exhaust.

### D.  Failure to Promote and Other Miscellaneous Claims

For similar reasons, Burton failed to exhaust administrative remedies for his miscellaneous allegations of HMS's unlawful conduct, including his failure to promote claim. (Dkt. 1 at 4). For example, in his complaint Burton alleges that HMS failed to release a seniority sheet to him, terminated his health insurance, and refused to serve African American customers, while falsely accusing him of doing so. Burton's EEOC charge describes none of these claims. (*See* Dkt. 1 at 7). Thus, for these claims, Burton's complaint and EEOC charge fail to, at minimum, "describe the *same conduct* and implicate the *same individuals*" *Chaidez*, 937 F.3d at 1004, and must be dismissed for failure to exhaust. Specifically, for his failure to promote claim, Burton's EEOC charge alleges HMS subjected him to "different terms and conditions of employment, including but not limited to, increased discipline and scrutiny." (*Id.*) This "brief and very general" EEOC charge allegation, however, "cannot sustain subsequent claims for *any* related conduct that took place in connection with" the claim alleged—including that HMS failed to promote him. *See Shah*,

8

2023 WL 6388228 at *4 (quoting *Rush*, 966 F.2d at 1110) (quotations omitted). The Court therefore dismisses these claims for failure to exhaust administrative remedies.

### E. Retaliation

Lastly, Burton failed to exhaust administrative remedies for his retaliation claim. Burton's EEOC charge states he complained to HMS about experiencing "harassment and different terms and conditions of employment, including but not limited to, increased discipline and scrutiny." (Dkt. 1 at 7). Burton was then "denied switching shifts." (*Id.*) From this conduct, Burton believed he "was discriminated against because of [his] race, Black, and in retaliation for engaging in protected activity[.]" (*Id.*) In comparison, Burton's complaint states that HMS "[n]ever held a meeting about [his] claims and complaints of racial discrimination" and "[n]ever received a complaint from anyone about" Burton—yet he got "disciplined." (*Id.* at 5).

Yet, from Burton's "brief and general" allegations, the Court cannot conclude that Burton's EEOC charge and complaint describe the same retaliatory conduct. *See Chaidez*, 937 F.3d at 1004–5; *Rush*, 966 F.2d at 1110. First, Burton's complaint relates to HMS's conduct between 2019 and 2023—while his EEOC charge relates to HMS's conduct between May 1, 2023 and June 7, 2023. In his complaint, Burton provides no specific dates—or even an approximate time range—to signal to the Court to when the retaliatory conduct in Burton's complaint occurred or if it falls within the appropriate 300-day window. Moreover, unlike his EEOC charge, Burton's complaint never mentions he was "denied switching shifts[,]" but simply that he got "disciplined." Even drawing all inferences in Burton's favor, it is too speculative to conclude that Burton's EEOC charge and complaint describe the same conduct with respect to his retaliation claim. *Chaidez*, 937 F.3d at 1004–5 ("The fact that the charge and complaint generally assert the same kind of discrimination is not sufficient, without some factual relationship between them.").

9

Ultimately, Burton's Title VII claims are dismissed without prejudice for failure to exhaust. Burton may refile his suit when and if he exhausts all his administrative remedies. *See Chaidez*, 937 F.3d at 1008; *see also Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009). Before refiling his suit, Burton must amend his EEOC charge to reflect the claims he wishes to sue for, attaching further details and more specific timeframes to the events alleged. A second suit would subject to the statute of limitations and any other applicable defenses. *See Brown v. United Airlines*, 2015 WL 5173646 at *4 (N.D. Ill. 2015).

## II. Failure to State a Claim

This leaves Burton's § 1981 color and racial discrimination claims. Unlike Title VII claims, § 1981 claims do not require Burton to exhaust administrative remedies before filing suit in federal court. *See Johnson v. Nestlé USA, Inc.*, 2023 WL 6388130 at *2 (N.D. Ill. 2023) (citing *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007)). Though HMS did not argue that Burton failed to state a claim under § 1981, they "move[d] to dismiss all claims" against HMS—which the Court reads as necessarily including Burton's § 1981 claims. (*See* Dkt. 24; Dkt. 26 at 1; Dkt. 1 at 3–4). Regardless, the legal analysis for discrimination claims under Title VII and § 1981 "is largely identical." *See Abubakar*, 2022 WL 14632902 at *4 n. 2 (citing *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015)).

To establish a § 1981 employment discrimination claim, Burton must plead facts that support (1) he is a member of a protected class, (2) the defendant intended to discriminate against him based on his protected characteristics; and (3) the discrimination concerned the making or enforcing of a contract. *See James v. Get Fresh Produce, Inc.*, 2018 WL 6199003 at *7 (N.D. Ill. 2018) (citing *Pourgharashi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006)); *see also Shah*, 2023 WL 6388228 at *6 (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013)).

Here, both of Burton's § 1981 discrimination claims fail to satisfy a showing of intent. Even construing Burton's pro se complaint liberally, "the complaint does not contain factual allegations connecting [Burton's] mistreatment by [HMS] to" his race or color. *Abubakar*, 2022 WL 14632902 at *4. Burton's complaint alleges various forms of mistreatment—including that HMS "[r]efused to separate [Burton] from [an e]mployee that assaulted" him, terminated his health insurance, "never held a meeting about" his racial discrimination "claims and complaints," and disciplined Burton despite "never receiving a complaint from anyone" about him. (Dkt. 1 at 5). But fatal to his claims, Burton fails to allege that HMS engaged in these acts *because of* his race or color. *See Kaminski*, 23 F.4th 774, 777–78 (7th Cir. 2022) (noting a plaintiff's "best shot at stating a plausible employment discrimination claim is to explain, in a few sentences, how [he] was aggrieved and what facts or circumstances lead [him] to believe [his] treatment was *because of*" his race or color) (emphasis in original). To survive a motion to dismiss, Burton must allege more than "generalized allegations" of discrimination by HMS. *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 855 (7th Cir. 2019). Rather, Burton must combine his discrimination allegations with "facts particular to his case." *Id.* Burton's complaint therefore fails to plead factual content that allows the Court to reasonably infer that HMS discriminated against Burton based on his race or color. *See Allen*, 41 F.4th at 850. Accordingly, the Court dismisses Burton's § 1981 race and color discrimination claims without prejudice.

## CONCLUSION

For the reasons above, HMS's motion to dismiss [24] is granted. Burton's Title VII racial discrimination, color discrimination, retaliation, hostile work environment, failure to promote, and other miscellaneous claims are dismissed without prejudice. Burton's § 1981 race and color discrimination claims are also dismissed without prejudice. If Burton believes he can cure the

deficiencies in accordance with this Order, he may file an amended complaint on or before April 22, 2024.

                                                             _____
                                                             Virginia M. Kendall
                                                             United States District Judge

Date: March 25, 2024