THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRIS BURTON, | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 23 C 5395 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| HMS HOST (Chief Executive Officer), | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Chris Burton has worked as a server for Defendant HMS Host at Chicago O'Hare International Airport since April 2013. On April 22, 2024, Burton filed an Amended Complaint alleging racial discrimination, failure to promote, failure to stop harassment, retaliation, and other various complaints occurring from 2017 to 2024. (Dkt. 35). HMS Host moves to dismiss Burton's Amended Complaint. (Dkt. 44). The Court previously granted HMS Host's motion to dismiss on March 25, 2024 for failure to exhaust administrative remedies and failure to state a claim. (Dkt. 33). For substantially similar reasons, HMS Host's motion [44] is granted.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all

1

reasonable inferences in his favor." *Id.* (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). The Court "also consider[s] any documents attached to and integral to the complaint as part of the [plaintiff's] allegations." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). The Court construes a pro se complaint liberally by giving the allegations "fair and meaningful consideration." *Palmer v. City of Decatur*, 814 F.2d 426, 428–29 (7th Cir. 1987).

## DISCUSSION

First, Burton improperly attempts to piecemeal supplement his original complaint. Burton's Amended Complaint must stand alone, without relying on any previous or later filings. In general, "an amended complaint supersedes an original complaint and renders the original complaint void." *Mosley v. Indiana Dep't of Corr.*, 2024 WL 1651902, at *1 (7th Cir. Apr. 17, 2024) (quoting *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004)). For example, Burton filed additional supplements to his Amended Complaint without leave of the Court and pled new facts in his Response. (*See* Dkts. 42–43, 55, 59). But after Burton's first amendment as a matter of course, he must seek either HMS Host's or the Court's approval to file additional amendments and may not amend through briefs in opposition to a motion to dismiss. Fed. R. Civ. P. 15(a); *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F3d 328, 348 (7th Cir. 2012). Further, Burton does not attach his Equal Employment Opportunity Commission ("EEOC") charge to the Amended Complaint and instead relies on its inclusion to the original complaint or references to other "pending" charges. (*See* Dkt. 59 at 6). This insufficient pleading makes it difficult for the Court to determine exhaustion. Even as a pro se litigant, Burton must follow procedural rules. *McCurry v. Kenco Logistics Servs.*, 942 F.3d 783, 787 n. 2 (7th Cir. 2019).

Even so, the Court takes the following facts from Burton's complaint and liberally construes his pro se pleadings. *See W. Bend Mut. Ins. Co.*, 844 F.3d at 675; *Erickson v. Pardus*,

2

551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (cleaned up)). Burton—who is African American and lives in Cook County, Illinois—has worked as a server for HMS Host at Chicago O'Hare International Airport since April 2013. (Dkt. 35 at 5). HMS allegedly discriminated against Burton based on his race between 2017 and 2024. (*Id.* at 19–42). Burton brings a plethora of other allegations against HMS Host, such as they (1) failed to promote him; (2) failed to stop harassment against him; (3) retaliated against him; and (4) various other complaints. (*Id.* at 6–17). In his Amended Complaint, Burton notes over one hundred discrete instances of alleged discrimination between 2017 and 2024.

On June 7, 2023, Burton filed a charge of discrimination with the EEOC. Burton does not attach that charge to his Amended Complaint. He also does not attach any new EEOC charge or right to sue letter he received since the Court considered the previous motion to dismiss. Thus, for efficiency and since the document is critical to the Amended Complaint, the Court will reference the June 7, 2023 EEOC charge that Burton attached to his original complaint in ruling upon the present motion to dismiss. (*See* Dkt. 1); *see also Goodlet v. City of Chicago*, 2023 WL 2499862, at *2 n.1 (N.D. Ill. Mar. 14, 2023).

In his EEOC charge, Burton alleged that HMS Host racially discriminated and retaliated against him between May 1, 2023 and June 7, 2023. (Dkt. 1 at 2). He alleged that HMS Host subjected him "to harassment and different terms and conditions of employment, including but not limited to, increased discipline and scrutiny." (*Id.*) Burton then complained to HMS Host, who later denied him from switching shifts. (*Id.*) Burton concluded: "I believe I was discriminated against because of my race, Black. [sic] and in retaliation for engaging in protected activity, in

3

violation of Title VII of the Civil Rights Act of 1964, as amended." (*Id.*) Burton received notice of his right to sue on June 9, 2023. (Dkt. 1 at 9; Dkt. 35 at 3).

## I. Failure to Exhaust Administrative Remedies

The Court previously dismissed Burton's Title VII claims to the extent they relied on conduct occurring before August 11, 2022 or after June 7, 2023. (*See* Dkt. 33 at 5). Before filing suit under Title VII, a plaintiff must file an EEOC charge within 300 days after the unlawful employment practice occurred and must bring claims, "like or reasonably related to the allegations of the charge and growing out of the allegations." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (quoting *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005)). At minimum, the charge and the complaint must "describe the same conduct and implicate the same individuals." *Id.* (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). These requirements "allows the EEOC an opportunity to settle the matter" and "ensures that the employer has adequate notice of the conduct the employee is challenging. *Id.*

Burton's Amended Complaint fares no better than his first as to failure to exhaust for conduct outside of the 300-day window. As the Court previously ruled, any alleged acts that occurred before August 10, 2022 or after June 7, 2023 fall outside of the 300-day window in which Burton was required to file an EEOC charge and will not be considered without additional proof of an EEOC charge covering that time frame and a right a right to sue letter.[1]

---

[1] HMS Host argues that claims resting on actions occurring before August 11, 2022 or after June 7, 2023 are also barred by the doctrine of res judicata. (Dkt 45 at 3–4). For res judicata (also known as claim preclusion) to apply, there must be (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) the same cause of action, and (3) the same parties or their "privies." *Chicago Title Land Tr. Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075, 1079 (7th Cir. 2011). Because the Court finds that the claims fail for failure to exhaust, it does not determine at this time whether Burton is barred from raising these claims whatsoever under this doctrine. *See McHale v. McDonough*, 41 F.4th 866, 872 (7th Cir. 2022) ("When a plaintiff fails to exhaust administrative remedies, her complaint must be dismissed without prejudice.").

4

## II. Remaining Title VII Allegations

In its previous ruling, the Court dismissed without prejudice Burton's claims of Title VII racial discrimination, failure to promote, failure to stop harassment, retaliation, and other miscellaneous complaints for failing to assert conduct "like or reasonably related to the allegations of the [EEOC] charge and growing out of the allegations." *Chaidez*, 937 F.3d at 1004; (*see* Dkt. 33 at 4–10). At this stage, to successfully show exhaustion, Burton would need to file an amended complaint with an EEOC charge covering the relevant time period that alleged conduct like or reasonably related to the conduct he alleges in the complaint. He has not done so.

Instead, in his Amended Complaint, Burton now alleges the following facts relating to actions between August 11, 2022 and June 7, 2023 that are supposedly covered by his EEOC charge:

- From 2022–2023, Burton's managers told him he was "not allowed to eat inside our unit on lunch break" or "eat or order salmon with [his] meal ticket" though other non-Black employees do so. (Dkt. 35 at 8, 25).

- In November 2022, Burton observed that mangers will "close out" his check when non-Black servers ask them. (*Id.* at 27).

- From March 2 to May 1, 2023, Burton "was forced to take a leave of absence" due to stress, racial discrimination, and harassment. (*Id.* at 8, 27. 43). When other employees have done so, they were "comfort[ed]" and given special access to "park across the street." (*Id.* at 27).

- On May 17, 2023 and May 22, 2023, Burton requested to meet with HR, the Union, and management about his treatment, but HR did not respond. (*Id.* at 8). HR responded to a bartender's complaint, who is Mexican, "right away." (*Id.* at 27).

- On May 17, 2023, Burton noted that his manager rotated servers on the floor plan but kept him in the back position for "days in a row." (*Id.* at 28).

- On May 19, 2023, Burton's manager "scratched [Burton's] name out from a shift [he] applied for" and changed the dates of the shift. (*Id.* at 8).

5

- On May 21, 2023 and May 23, 2023, Burton's manager disciplined him for "staying in the restroom too long." (*Id.* at 8, 28) Burton had requested a meeting with HR before this occurred. (*Id.* at 28)

- On various instances from May 24 to June 1, 2023 employees who are Filippino, Bulgarian, and Mexican were allowed to take home food, bring in outside food, and eat the restaurant's food, while Burton was not. (*Id.* at 26).

- On May 29, 2023, the restaurant's cook told Burton and another Black employee that he would not make their customers' salads and would only be prepping salads for the bartender. The cook and the bartender were both Mexican. (*Id.* at 9, 29).

- On May 30, 2023, HMS Host refused Burton a copy of the "server seniority sheet" while giving it to other employees. (*Id.* at 32).

The Court still finds that a disparity exists between the generally stated EEOC charge and the Amended Complaint's alleged conduct. Although "technicalities are particularly inappropriate in a statutory scheme like Title VII," where pro se litigants typically initiate the process, "the requirement of some specificity in an EEOC charge is not a mere technicality." *Shah v. AbilityLab*, 2023 WL 6388228 at *4 (N.D. Ill. 2023) (citing *Reynolds v. Tangherlini*, 737 F. 3d 1093, 1100 (7th Cir. 2013)). And though Burton's EEOC charge does not need to allege "each and every fact that combines to form the basis of each claim in [his] complaint," it does need to "at a minimum, describe the same conduct and implicate the same individuals." *Cheek*, 31 F.3d at 500; *Moore v. Vital Prods., Ind.*, 641 F.3d 253, 256 (7th Cir. 2011); *see Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination."). Ordinarily, a plaintiff must amend their original EEOC charge in order to include new allegations or discrimination, or to "clarify and amplify allegations made therein." 29 C.F.R. § 1601.12(b); *Reese v. Krones, Inc.*, 811 F. App'x 371, 372 (7th Cir. 2020); *Patmythes v. City of Madison*, 2018 WL 2976025, at *10 (W.D. Wis. June 13, 2018), *aff'd*, 856 F. App'x 623 (7th Cir. 2021) (noting that such amendments relate back to the filing of the original charge).

6

Overall, as the Court previously explained, the current June 7, 2023 EEOC charge provides such little detail that it is almost impossible for the Court to determine whether the conduct is reasonably related to the Amended Complaint.

Thus, Burton's attempt to plead more specific facts does not remedy the Amended Complaint's fatal defect: his failure to exhaust administrative remedies. Accordingly, his racial discrimination, failure to promote, failure to stop harassment, retaliation, and other miscellaneous complaints are dismissed for the reasons explained in the Court's previous opinion. (*See* Dkt. 33).

### III.    § 1981 Racial Discrimination

Burton was not required to exhaust administrative remedies before alleging racial discrimination under 42 U.S.C. § 1981. *See Johnson v. Nestlé USA, Inc.*, 2023 WL 6388130 at *2 (N.D. Ill. 2023) (citing *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007)). Instead, § 1981 has a four year statute of limitations that runs from the date of the alleged unlawful activity to the date of filing the suit. *See Riley v. Elkhart Community Schools*, 829 F.3d 886, 891 (7th Cir. 2016); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Here, this would be from August 11, 2019 to August 11, 2023. (*See* Dkt. 1).

Section 1981 makes it unlawful to discriminate on the basis of race when making and enforcing contracts. 42 U.S.C. § 1981. The Court analyzes Burton's § 1981 claim in the same way as a Title VII claim. *Phillips v. Baxter*, 2024 WL 1795859, at *2 (7th Cir. Apr. 25, 2024). Finding that the discrimination constituted an adverse employment action is an essential element of race discrimination under § 1981. *See Jordan v. Evans*, 2024 WL 2271839, at *2 (7th Cir. May 20, 2024) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)); *see also Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). In fact, federal law "does not protect against petty slights, minor annoyances, and bad manners," *Boss v. Castro*, 816 F.3d 910, 918 (7th

7

Cir. 2016), and "is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace," *Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 406 (7th Cir. 2010). Adverse employment actions include "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce further career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Reives v. Ill. State Police*, 29 F.4th 887, 894 (7th Cir. 2022).

Out of the forty-five pages of Burton's perceived adverse actions, no one in particular rises to the level of the first two categories. Yet, the Seventh Circuit has noted the "broad[]" nature of an adverse employment action under § 1981 can include a hostile work environment. *See Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012)). Thus, reading Burton's Amended Complaint liberally, the Court understands the lengthy allegations of workplace difficulties Burton connects to his race as alleging that HMS Host failed to stop race-based harassment, creating a hostile work environment. *See Evans v. Folding Guard Co.*, 2016 WL 233095, at *2 (N.D. Ill. Jan. 20, 2016); *Newell v. Alden Vill. Health Facility for Child. & Young Adults, Inc.*, 2013 WL 5663632, at *2 (N.D. Ill. Oct. 17, 2013).

In turn, to state a claim for hostile work environment, the plaintiff must set out facts that, "(1) the work environment must have been both subjectively and objectively offensive; (2) [his race] . . . must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability." *See Milligan v. Bd. of Trustees of S. Ill. Univ.*, 686 F.3d 378, 383 (7th Cir. 2012). In order to determine whether the conduct was objectively offensive and severe or pervasive, the Court analyzes, "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely

8

offensive, and whether it unreasonably interferes with an employee's work performance." *Gates v. Bd. of Educ. of the City of Chi.*, 916 F.3d 631, 636 (7th Cir. 2019). Further, the plaintiff need not show that the complained-of conduct was explicitly racial but must show it had a racial character or purpose. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544–45 (7th Cir. 2011) (affirming dismissal of hostile work environment claim where there was no allegation of "racial slurs, epithets, or other overtly race-related behavior"). Lastly, an employer may be liable for a hostile work environment claim where the harasser is a supervisor, or there the employer has been negligent either in discovering or remedying the harassment. *Clacks v. Kwik Trip, Inc.*, 2024 WL 3514772, at *3 (7th Cir. July 24, 2024) (citation omitted).

While Burton's lengthy allegations register in the tone of hostile work environment, Burton fails to plead facts sufficient to show the conduct complained of is objectively offensive and severe or pervasive. Most tellingly, Burton only provides conclusory allegations connecting the alleged behavior to a "racial character or purpose." For example, Burton pleads "feelings of racial discrimination" when: (1) HR cut his health insurance (2) his co-workers were afforded perceived perks; (3) his manager scratched his name from a shift; (4) his manager delayed paying him out tips and other monetary value on two occasions; (5) his co-workers and manager engaged in inappropriate harassing and bullying actions; and (6) HR repeatedly refused to meet with him or act on his complaints. (*See* Dkt. 35 at 27–42). Burton, however, pleads no facts leading to the reasonable inference that any of this conduct occurred *because of* his race, just that it was "merely offensive," and he subjectively felt it to be so.

Out of the specified allegations that the Court finds most serious, Burton's allegations regarding the bullying and harassment faced by his manager and co-workers and HR's refusal to intervene are the most promising. Even so, Burton alleges not even *one* racial slur, epithet, or

9

overtly race-based behavior in the seven years of conduct he outlines in his Amended Complaint. *See e.g.*, *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 814 (7th Cir. 2022) (finding no connection to "race" even where plaintiffs contended they "had to do harder jobs than white employees" and "were denied overtime or opportunities for bonuses"); *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1116 (7th Cir. 2022) (finding a few demeaning conversations and instances of aggressive yelling not severe or pervasive); *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004) (noting that although racial epithets are not a prerequisite to finding a race-based hostile work environment, they factor into the analysis of objective offensiveness); *Nelson v. Idleburg*, 2020 WL 2061555, at *10 (N.D. Ill. Apr. 29, 2020); *contra Gates*, 916 F.3d at 639–41 (finding evidence of racial harassment where a supervisor called his employee the "N-word" and other derogatory terms that were "severe and humiliating"); *McGinnis v. United States Cold Storage*, 2018 WL 2320930, at *5 (N.D. Ill. May 22, 2018) (denying dismissal where plaintiff pled "racially-charged epithets" like "cotton picking" and "boy"). Instead, Burton notes that his co-workers and manager were "verbally rude," "bumped into [him]," yelled "you can go home," using "violent and inappropriate language," and "bullied him." (Dkt. 35 at 7, 9, 12–13, 20, 23). Ultimately, "not every perceived unfairness in the workplace may be ascribed to discriminatory motivation because the complaining employee belongs to a racial minority." *Paschall*, 28 F.4th at 814 (citation omitted).

## CONCLUSION

Burton is granted leave to file a Second Amended Complaint with his Title VII claims only if that filing will not be futile. That is, if the EEOC allows amendment of his June 2023 EEOC charge to clarify and amplify his allegations with details and more specific timeframes of the alleged events occurring between August 11, 2022 and June 7, 2023 and attaches it to an amended

complaint. Lastly, Burton's § 1981 racial discrimination claim is dismissed without prejudice. For the reasons above, HMS's motion to dismiss [44] is granted.

_____
Virginia M. Kendall
United States District Judge

Date: August 21, 2024

11